UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X

RONALD MOYE,

                              Plaintiff,        **FIRST AMENDED
                                                COMPLAINT**

                -against-
                                                11 CV 316 (PGG)

THE CITY OF NEW YORK; SGT. NELSON CABAN,
Shield # 5131; P.O. PAUL JESELON, Shield
# 24653; P.O. SAMUEL FONTANEZ, Shield #
25590; P.O. EDWARD SIMONETTI, Shield #         ECF Case
23722; P.O. MATTHEW BOORMAN, Shield #
28212; P.O. FRANK PAPA, Shield # 29209;        <u>Jury Trial Demanded</u>
P.O. TAWAINA O'NEAL, Shield # 19346;
P.O. BRENNAN; P.O. JOHN DOES # 1-10;
P.O.; and A.D.A. DUSTIN CHAO,

                              Defendants.

---------------------------------------- X

<u>**PRELIMINARY STATEMENT**</u>

        1.    This is a civil rights action in which plaintiff

seeks relief for the violation of plaintiff's rights secured by

42 U.S.C. §§ 1983, and 1988; the First, Fourth, Fifth, Sixth,

and Fourteenth Amendments to the United States Constitution; and

the laws of the State of New York.  The claims arise from an

incident that occurred on or about March 12, 2002 through

October 21, 2009.  During the incident the City of New York, and

members of the New York City Police Department ("NYPD") and

members of the New York County District Attorney's Office

("NYCDA") subjected plaintiff to, among other things: malicious

prosecution, retaliation for free speech, conspiracy, abuse of

process, fabricated evidence, an unfair trial, punishment

without due process, gross negligence, intentional and negligent

infliction of emotional distress, negligent hiring and retention

of incompetent and unfit employees, negligent supervision,

training and instruction of employees, and implementation and

continuation of an unlawful municipal policy, practice, and

custom.  Plaintiff seeks compensatory and punitive damages,

declaratory relief, an award of costs and attorney's fees,

pursuant 42 U.S.C. §§ 1988, and such other and further relief as

the Court deems just and proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. §§

1983, and the First, Fourth, Fifth, Sixth, and Fourteenth

Amendments to the United States Constitution.  Jurisdiction is

conferred upon this Court by the aforesaid statutes and 28

U.S.C. §§ 1331 and 1343.

3.    Plaintiff invokes the supplemental jurisdiction

of this Court pursuant to 28 U.S.C. § 1367 to hear and decide

claims arising under state law.  A notice of claim was duly

filed on defendant City of New York and the NYCDA within 90 days

of the incident at issue, more than 30 days have elapsed since

such filing and the City of New York has refused to settle

plaintiff's claims.  Moreover, this action has been filed within

one year and 90 days of the incidents that are the basis of this claim.  On May 17, 2010, a hearing, pursuant to Municipal Law 50-H, was held where plaintiff appeared and answered questions posed by counsel for defendant City of New York.  Plaintiff has satisfied all conditions precedent for the filing of this action.

4.   Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in New York County, and the City of New York is subject to personal jurisdiction in the Southern District of New York.

**PARTIES**

5.   Plaintiff Ronald Moye is a resident of the State of New York, New York County.  At the time of some of the acts alleged herein he was housed at various correctional facilities within the State of New York.

6.   At all times referred to herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.   Defendant City of New York was the employer of the individual defendants, and is and was at all times relevant to this complaint responsible for the policies, practices and customs of the NYCDA and NYPD.

8.    At all times referred to herein, defendants Sgt. Nelson Caban, Shield # 5131; P.O. Paul Jeselon, Shield # 24653; P.O. Samuel Fontanez, Shield # 25590; P.O. Edward Simonetti, Shield # 23722; P.O. Matthew Boorman, Shield # 28212; P.O. Frank Papa, Shield # 29209; P.O. Tawaina O'Neal, Shield # 19346; P.O. Brennan; and P.O. John Does # 1-10 were New York City Police Officers, employed at the 28th Precinct, located in New York, New York who violated plaintiff's rights as descried herein.  They are sued in their individual and official capacities.

9.    At all times referred to herein, defendant A.D.A. Dustin Chao was a New York County Assistant District Attorney who violated plaintiff's rights as descried herein.  He is sued in his individual capacity.

### STATEMENT OF FACTS

### Introduction

10.    From March 12, 2002 through October 21, 2009, in New York, New York, the defendants, including upon information and belief, defendants Sgt. Caban, P.O. Jeselon, P.O. Fontanez, P.O. Simonetti, P.O. Boorman, P.O. Papa, P.O. O'Neal, P.O. Brennan, P.O. John Does # 1-10, and A.D.A. Chao, at times acting in concert and at times acting independently, committed the following illegal acts against plaintiff.

11.    Plaintiff Ronald Moye was released from prison on June 9, 2008 after an incarceration of more than four years,

based on evidence that was fabricated and manipulated by the
defendants.

   12. On or about March 12, 2002, at approximately 8:00
p.m., in the vicinity of 352 West 118th Street, in the City and
County of New York, members of the New York City Police
Department, including defendants Sgt. Caban, P.O. Jeselon, P.O.
Fontanez, P.O. Simonetti, P.O. Boorman, P.O. Papa, and P.O.
O'Neal, and P.O. John Does # 1-10 falsely arrested plaintiff.

   13. Plaintiff was charged with the sale of a
controlled substance, arraigned, indicted under Indictment No.
1428/2002, and convicted after two trials.

   14. Plaintiff was sentenced to 4 ½ to 9 years
imprisonment.

   15. Plaintiff appealed his conviction, which was
reversed by the Appellate Division, First Department.

   16. The Court of Appeals affirmed and remanded the
matter to the Supreme Court for the County of New York, and the
case was dismissed in its entirety on October 21, 2009,
terminating in plaintiff's favor.

   17. The defendants, including defendants Sgt. Caban,
P.O. Jeselon, P.O. Fontanez, P.O. Simonetti, P.O. Boorman, P.O.
Papa, P.O. O'Neal, P.O. Brennan, P.O. John Does # 1-10, and
A.D.A Chao knew that there was not probable cause to arrest and
prosecute plaintiff, nevertheless, they conspired and

intentionally placed fabricated evidence before the jury and made false statements to ensure plaintiff's wrongful conviction.

18.   In its decision to overturn the conviction, the Appellate Division, First Department, stated in pertinent part: In this case, we vacate a conviction and remand for a new trial because the prosecutor's conduct at trial amounted to an egregious violation of the unsworn witness rule. The form and substance of the prosecutor's summation whereby he injected himself, his pretrial conduct and his credibility into the proceedings were highly prejudicial to the defendant, and constituted prosecutorial misconduct that the trial judge impermissibly allowed over objection. …  This is a case where the People created the situation by eliciting conflicting testimony from their own witnesses, and then attempted to correct the situation at sidebar by vouching to the court for the witness whose testimony was more likely to secure them a conviction.  After the court denied a mistrial, defense counsel properly pointed to the conflicting testimony, and suggested that the police officer had lied with the prosecutor's complicity….

### Plaintiff's Arrest

19.   On March 12, 2002, defendants, including P.O. Jeselson and P.O. O'Neal were stationed on the rooftop and conducting nighttime observation narcotics surveillance.

20.    During this surveillance, defendant P.O. Jeselson claimed that he observed the plaintiff extend his hand from the driver's side window and hand a small glassine to David Mumford, who in turn handed it to an unapprehended customer.

21.    The car was located on the north side of West 118th Street up near Manhattan Avenue.

22.    The defendant police officers were stationed on the rooftop of an apartment house on the south side of West 118th Street near the corner of Morningside Avenue.

23.    The defendant police officers were approximately 300 feet from the plaintiff.

24.    It was nighttime during this alleged transaction.

25.    The police, including upon information and belief, defendants Sgt. Caban, P.O. Fontanez, P.O. Simonetti, P.O. Boorman, P.O. Papa, and P.O. John Does # 1-10, moved in towards Ronald Moye and Mumford.

26.    Once the defendant officers, including Sgt. Caban, P.O. Fontanez, P.O. Simonetti, P.O. Boorman, P.O. Papa, and P.O. John Does # 1-10 confronted plaintiff, he was not free to disregard their questions, or walk way or leave the scene.

27.    At the scene and later at the 28th Precinct, the defendants searched plaintiff and the car and discovered United States currency on the plaintiff's possession and inside the vehicle.

7

28.   When plaintiff complained about the defendant's misconduct they retaliated against him and increased their level of mistreatment.

29.   The defendant officers, including Sgt. Caban, P.O. Jeselon, P.O. Fontanez, P.O. Simonetti, P.O. Boorman, P.O. Papa, P.O. O'Neal, and P.O. John Does # 1-10, without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime falsely arrested plaintiff.

30.   Defendants committed excessive force against plaintiff by maliciously, gratuitously, and unnecessarily grabbing him, pushing him against a wall, and placing excessively tight handcuffs on him.

31.   The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

32.   Plaintiff was physically injured as a result of the excessive use of force, and suffered numbness and marks to his wrists.

33.   Thereafter, the defendants transported the plaintiff the 28th Precinct where he was unlawfully strip searched, and then transferred him to Manhattan Central Booking.

34.    While plaintiff was incarcerated at the 28th Precinct and Central Booking awaiting arraignment, defendants Sgt. Caban, P.O. Jeselon, P.O. Fontanez, P.O. Simonetti, P.O. Boorman, P.O. Papa, P.O. O'Neal, and P.O. John Does # 1-10, pursuant to a conspiracy, falsely and maliciously told the New York County District Attorney's Office that plaintiff had committed various crimes; based upon the defendants' false information, the New York County District Attorney's Office chose to prosecute plaintiff.

35.    Plaintiff was indicted under Indictment No. 1428/2002, after the defendants, including Sgt. Caban, P.O. Jeselon, P.O. Fontanez, P.O. Simonetti, P.O. Boorman, P.O. Papa, P.O. O'Neal, and P.O. John Does # 1-10, conspired and gave false testimony and intentionally placed false evidence before the grand jury, alleging that they had observed plaintiff distribute a controlled substance to another individual.

36.    At plaintiff's arraignment, bail was set and posted, and plaintiff was released.

37.    The above-stated malicious prosecution terminated in plaintiff's favor when the case against him was dismissed in its entirety on October 21, 2009.

### First Trial

38.    The defendants, including Sgt. Caban, P.O. Jeselon, P.O. Fontanez, P.O. Simonetti, P.O. Boorman, P.O. Papa,

P.O. O'Neal, P.O. John Does # 1-10, and A.D.A. Chao falsely and knowingly introduced photographs and testimony at trial, which they claimed showed the position of the plaintiff's car parked along West 118th Street.

39.    Defendant P.O. Jeselson falsely claimed to have observed plaintiff's hand during the nighttime observation.

40.    The individual defendants falsely and knowingly claimed that the photographs purported to depict the positioning of the plaintiff's automobile as it was claimed to have been observed during a rooftop observation and surveillance conducted at night, with the assistance of binoculars.

41.    The photographs from the first trial were taken in or about June 2002.

42.    Defendants A.D.A. Chao, P.O. Jeselson, and P.O. Papa were present when a district attorney photographer took the photographs.

43.    The photographs were taken from the March 12, 2002 observation post.

44.    The purpose of taking the photographs was so that the jury would have an opportunity to experience the vantage point that P.O. Jeselson and P.O. O'Neal had on March 12, 2002.

45.    The photographs did not replicate the nighttime conditions.

46.    The photographs clearly demonstrated that the defendants could not have seen plaintiff's hand extend from the driver's side and hand a small glassine to his codefendant, since the driver's side could not be viewed from the vantage point of the rooftop observation (even with binoculars).

47.    Defendant P.O. Jeselson admitted that, as he looked at the photographs of the vehicles parked alongside West 118th Street, he was not able to see the driver's side of the vehicles in the photographs.

48.    The angle of observation simply did not permit the police officer defendants to observe a hand protrude from the driver's side window of the car.

49.    The first trial resulted in a mistrial, as the jury was unable to reach a verdict.

**Second Trial**

50.    In preparing for the retrial, the defendants, including defendants A.D.A. Chao, P.O. Jeselson, and P.O. Brennan, unlawfully conspired to provide false evidence at the upcoming second trial.

51.    The individual defendants decided to take more pictures of the same block where plaintiff was alleged to have committed a crime.

52.   The defendants, including A.D.A Chao and P.O. Jeselson, had a meeting to discuss what they were going to take pictures of at the observation post.

53.   To that end, in February 2003, the defendants, including defendants A.D.A. Chao, P.O. Jeselson and P.O. Brennan, with a photographer, returned to the West 118th Street rooftop and manipulated evidence that would conform to the People's theory of the case, which they would eventually present to the Court and jury during the retrial.

54.   Defendant A.D.A. Chao notified P.O. Jeselson about the date of the second photographic session.

55.   At the photographic session, P.O. Jeselson directed P.O. Brennan where to park the car that was simulating plaintiff's car on the night in question.

56.   P.O. Brennan pulled up in the car to the location, and stuck his hand outside the car window.

57.   However, from the observation post, the defendants and photographer could not see a hand sticking outside of the car window.

58.   The defendant repositioned the car so that the back of the vehicle faced outward so that they would have a greater view of the driver's side window.

59.   P.O. Jeselson directed P.O. Brennan to angle the car so that he could see his hand.

12

60.   The repositioning of the car allowed the defendants to take photographs of P.O. Brennan's hand sticking outside of the car window.

61.   The P.O. Jeselson and A.D.A Chao had the photographer take close-up photographs of P.O. Brennan's hand.

62.   After the close-ups, the defendants directed defendant P.O. Brennan to return the vehicle to the curbside position.

63.   After the close-up photographs were taken at the new angle, the defendants repositioned the car along the curbside where additional photographs taken at a wide angle to falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb.

64.   The defendants took the photograph, as evidence, to show that P.O. Jeselson could see a hand coming out the car window on the date of plaintiff's arrest.

65.   Prior to taking the photographs P.O. Jeselson was given an opportunity to look through the lens.

66.   At the retrial, the individual defendants, including P.O. Jeselon and A.D.A. Chao submitted the manipulated photographs into evidence.

67.   It was established that the photographs were taken by Laura Badger, the supervising photographer from the New

York County District Attorney's office, at the direction of the
defendants.

68.   As supervisor of the photography unit, Ms.
Badger's duties were, among other things, to photograph crime
scenes, victim's injuries, property and evidence.

69.   Ms. Badger routinely traveled to locations to
take photographs from observation posts.

70.   Ms. Badger routinely replicated the strength of
binoculars used by the police officers from observation posts.

71.   At the retrial, defendant P.O. Jeselson falsely
testified on direct examination that his fellow defendant
officer's hand was visible from the observation post as
supported by the manipulated photographs.

72.   Defendant P.O. Jeselson stated that the
automobile was not repositioned and then photographed in a
suggestive manner, to support his testimony that a hand could be
viewed from the rooftop observation post.

73.   A.D.A Chao purposely elicited false testimony
from P.O. Jeselson concerning the manipulated photographs.

74.   A.D.A. Chao elicited fabricated testimony that
P.O. Jeselson could view plaintiff's hand from the rooftop
observation post on the arrest date.

75.   A.D.A. Chao and P.O. Jeselson concealed the fact that the car in the photographs had in fact been repositioned in the second photographic session.

76.   When confronted with photographs introduced by the defense, that the vehicle was, in fact, moved and repositioned, defendant P.O. Jeselson falsely claimed that he had no recollection of how or who instructed defendant P.O. Brennan to move the vehicle.

77.   However, Laura Badger, who had gone with the defendants to take the photographs, testified differently, and completely discredited P.O. Jeselson.

78.   Laura Badger informed the jury, that when the defendants first arrived at the location to take the additional photographs, an unmarked police vehicle was parked along the curb to replicate the position of plaintiff's vehicle.

79.   Laura Badger informed the jury that the defendants, including P.O. Jeselson, instructed defendant P.O. Brennan by telephone, to extend his hand outside the window.

80.   But contrary to defendant P.O. Jeselson's testimony at the retrial, the defendant officer's hand was not visible from the vantage point of the rooftop.

81.   According to Laura Badger, the defendants moved the vehicle to an angle where the hand could be visible.

82. Once that vantage point was established, the defendants had her take close-up photographs of the hand.

83. After the close-ups, the defendants directed defendant P.O. Brennan to return the vehicle to the curbside position.

84. After the close-up photographs were taken at the new angle, the defendants repositioned the car along the curbside where additional photographs taken at a wide angle to falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb (shown at a wide angle).

85. During the summation, plaintiff's defense counsel Anthony L. Ricco, Esq. argued that the evidence adduced at trial showed that defendant P.O. Jeselson had lied on the witness stand concerning the positioning of the vehicle and his claimed observations.

86. Defendant A.D.A. Chao in responding to Anthony L. Ricco's argument improperly vouched for defendant P.O. Jeselson.

87. Defendant A.D.A. Chao argued: Now, what about the positioning of this car?  What is the motive?  Well, I guess it's to show the jurors that he was able to see what he told you.  But his motive, really, I think in this case is to perjure himself because there's no opportunity. Mr. Ricco spoke about the people on that roof.  It's in evidence.  Officer Jeselson

16

was on that roof, the photographer Laura Badger was on the roof, and I was on that roof.  Now, if he is directing something improperly, that is Officer Jeselson, well, it's in front of me.

88.   Defendant A.D.A. Chao continued on summation to state: And if [defendant P.O. Jeselson] knew he was going to get away with it when I say that's the opportunity, you know Mr. Ricco talked about a lot of people losing their jobs about perjuring themselves, about the integrity of Robert Morgenthau's office.  Well, if Officer Jeselson thought he was going to get away with it –

89.   Anthony L. Ricco objected to this argument as vouching for his witness, but was incorrectly overruled.

90.   Defendant A.D.A. Chao continued on summation: if Officer Jeselson thought he was going to get away with it with me present, all that talk about firing, that should be me, because I'm prosecuting this case, not Officer Jeselson.

91.   Defendant counsel Anthony L. Ricco objected again as vouching, but was again wrongly overruled.

92.   Defendant A.D.A. Chao continued:   Ladies and gentlemen, Mr. Morgenthau should fire me, if Officer Jeselson thinks he is going to be able to say that in court, lie to you, when the person who is standing right next to him on the roof is me.  Well, that lies with me.  So what's the explanation?  If there's no motive, no opportunity for why Ms. Badger remembers

it differently.  Well, there's evidence that you heard the
officer was on the roof.  Evidence that you heard I was on the
roof also.  I have no other answer, other than the fact that
she is mistaken.

93.    However, Laura Badger stated that the vehicle was
repositioned because, upon the initial observation of the
vehicle parked along the curb, the hand could not be viewed from
the observation post.

94.    Laura Badger further contradicted P.O. Jeselson,
by clearly stating that it was Police Officer Jeselson who
directed defendant P.O. Brennan where and how to reposition the
vehicle via cellular telephone.

95.    The individual defendants' fabrications and
concealment of material, exculpatory, and impeachment evidence
adduced during the investigation, including the photographic
sessions, were critical in obtaining the plaintiff's conviction.

**General Allegations**

96.    Defendant Sgt. Caban supervised P.O. Jeselon,
P.O. Fontanez, P.O. Simonetti, P.O. Boorman, P.O. Papa, P.O.
O'Neal, P.O. Brennan, and P.O. John Does # 1-10 concerning the
above-mentioned unlawful acts against plaintiff, and approved
the unlawful acts against plaintiff.

97.    The aforesaid events are not an isolated
incident.  Defendant City of New York is aware (from lawsuits,

notices of claim and complaints) that many of the NYPD's
officers and NYCDA's attorneys are insufficiently trained on the
proper way to investigate, prosecute, prepare evidence, search
arrestees or detainees, and treat innocent and/or uninvolved
individuals who are found at an incident scene and/or
investigation location.

98.    Defendant City of New York is further aware that
such improper training has often resulted in a deprivation of
civil rights.  Despite such notice, the City of New York has
failed to take corrective action.  This failure caused the
defendants in the present case to injure plaintiff, violate the
law, and violate the plaintiff's rights.

99.    Moreover, defendant City of New York was aware
prior to the incident that the individual defendants lacked the
objectivity, temperament, maturity, discretion, and disposition
to be employed.  Despite such notice, defendants has retained
these individuals, and failed to adequately train and supervise
them.

100.  At all times defendant City of New York by the
NYPD and NYCDA, and its agents, servants and/or employees,
carelessly, negligently and recklessly trained the individual
defendants for the position of police officers and/or assistant
district attorneys.

101.  At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees, carelessly, negligently and recklessly supervised, controlled, managed, maintained and inspected the activities of the individual defendants.

102.  At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees caused, permitted and allowed the individual defendants to act in an illegal, unprofessional, negligent and/or deliberate manner in carrying out their official duties and/or responsibilities.

103.  At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees carelessly, negligently and recklessly retained in its employ, the individual defendants, who were clearly unfit for their positions, who acted in an illegal, unprofessional, negligent and/or deliberate manner in carrying out their official duties and/or responsibilities.

104.  The occurrence(s) and injuries sustained by plaintiff, were caused solely by, and as a result of the malicious, reckless, negligent, and/or intentional conduct of defendant City of New York, and the NYPD and NYCDA, and its agents, servants and/or employees, as set forth above, without provocation on the part of the plaintiff contributing thereto,

20

specifically, the negligent and reckless manner in which said

defendant hired, trained, supervised, controlled, managed,

maintained, inspected and retained the individual defendants.

105.  The individual defendants acted in concert

committing the above-described illegal acts toward plaintiff.

106.  The plaintiff did not resist arrest at any time

during the above incidents.

107.  The plaintiff did not violate any law,

regulation, or administrative code; commit any criminal act; or

act in a suspicious or unlawful manner prior to or during the

above incidents.

108.  The individual defendants did not observe

plaintiff violate any law, regulation, or administrative code;

commit any criminal act; or act in a suspicious or unlawful

manner prior to or during the above incidents.

109.  At no time prior to, during or after the above

incidents were the individual defendants provided with

information, or in receipt of a credible or an objectively

reasonable complaint from a third person, that plaintiff had

violated any law, regulation, or administrative code; committed

any criminal act; or acted in a suspicious or unlawful manner

prior to or during the above incidents.

110.  The defendants acted under pretense and color of

state law and within the scope of their employment.  Said acts

by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

111.  As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

## FIRST CLAIM

### (VIOLATING PLAINTIFF'S RIGHT TO FREE SPEECH UNDER FEDERAL LAW)

112. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

113. Plaintiff exercised free speech during the incident by, among other things, telling the individual police officer defendants that he had not committed a crime, that the officers were mistreating him and that the individual police officer defendants were acting in an unlawful manner.

114. Plaintiff's use of free speech was a motivating factor in the individual police officer defendants' decision to arrest, and prosecute him.

115. Accordingly, the individual police officer defendants are liable to plaintiff under the First Amendment to

the United States Constitution for violating plaintiff's right
to free speech.

## SECOND CLAIM

### (MALCIOUS PROSECUTION UNDER FEDERAL LAW)

116. Plaintiff repeats and realleges all the foregoing
paragraphs as if the same were fully set forth at length herein.

117. The individual defendants, including A.D.A Chao,
are liable to plaintiff for malicious prosecution because,
pursuant to a conspiracy and acting with malice, the defendants
initiated a malicious prosecution against plaintiff by
knowingly, intentionally, and maliciously providing false
statements to prosecutors, grand jury, and/or the court(s),
which alleged plaintiff had committed various crimes; and based
upon these false statements, prosecutors prosecuted plaintiff
until the case against plaintiff was dismissed in its entirety.

118. The individual defendants lacked probable cause
to believe the above-stated malicious prosecution(s) could
succeed.

119. The individual defendants acted to cover up their
illegal and unconstitutional conduct by initiating the above-
stated malicious prosecution(s).

120. The above-stated malicious prosecution(s) caused
a sufficient post-arraignment liberty restraint on plaintiff.

## THIRD CLAIM

### (MALCIOUS PROSECUTION UNDER STATE LAW)

121. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

122. The individual defendants, including A.D.A Chao, are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution against plaintiff by knowingly, intentionally, and maliciously providing false statements to prosecutors, grand jury, and/or the court(s), which alleged plaintiff had committed various crimes; and based upon these false statements, prosecutors prosecuted plaintiff until the case against plaintiff was dismissed in its entirety.

123. The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

124. The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

## FOURTH CLAIM

### (ABUSE OF PROCESS UNDER STATE LAW)

125. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

126. The individual defendants, including A.D.A. Chao, are liable to plaintiff because they issued process with intent to harm plaintiff without justification, to accomplish unjustified purpose, namely his fraudulent conviction, and perverted use of otherwise legal process to obtain a collateral objective, namely his fraudulent conviction.

## FIFTH CLAIM

### (DENIAL OF A FAIR TRIAL)

127. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

128. The individual defendants, including A.D.A. Chao, are liable to plaintiff because they intentionally created false information likely to influence a fact finder's or jury's decision, including manipulated photographs, fabricated testimony, and the concealment of exculpatory material, and forwarded that information to prosecutors, a grand jury, and/or court, and presented that information to a jury, thereby violating plaintiff's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

## SIXTH CLAIM

### (FABRICATED EVIDENCE)

25

129. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

130. The individual defendants, including A.D.A. Chao, are liable to plaintiff because they intentionally conspired to fabricate evidence against him, including manipulated photographs, fabricated testimony, and the concealment of exculpatory material depriving him of liberty without due process of law.

131. The individual defendants were on notice that creating fabricated evidence is a clear violation of law because it well established that police officer and prosecutors who knowingly use false evidence at trial to obtain a conviction act unconstitutionally and is redressable in an action for damages under 42 U.S.C. § 1983.

132. Furthermore, the individual defendants violated the law by making false statements of fact in a certification for a determination of probable cause and/or a conviction.

133. Furthermore, the individual defendants, including A.D.A. Chao, violated the law by making false photographic evidence to obtain a conviction, while performing the function of investigators.

## SEVENTH CLAIM

### (42 U.S.C. § 1983 CONSPIRACY)

134. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

135. The individual defendants are liable to plaintiff because they agreed to act in concert to inflict an unconstitutional injury; and committed an overt act done in furtherance of that goal causing damage to plaintiff.

## EIGHTH CLAIM

### (NEGLIGENT SUPERVISION, HIRING, MONITORING TRAINING AND RETENTION OF UNFIT EMPLOYEES UNDER STATE LAW)

136. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

137. Defendant City of New York is liable to plaintiff because the occurrence and injuries sustained by plaintiff, were caused solely by, and as a result of the malicious, reckless, negligent, and/or intentional conduct of defendant City of New York, and the NYPD, and NYCDA, its agents, servants and/or employees, as set forth above, without provocation on the part of plaintiff contributing thereto, specifically, the negligent and reckless manner in which said defendant hired, trained, supervised, controlled, managed, maintained, inspected and retained its police officers and assistant district attorneys.

27

## NINTH CLAIM

### (INTENTIONAL AND NEGLIGENT INFLICTION
### OF EMOTIONAL DISTRESS UNDER STATE LAW)

138. Plaintiff repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

139. That by virtue of the occurrence and the defendants, individually and/or by their agents, servants and/or employees, negligently and/or intentionally inflicted emotional harm upon plaintiff.

140. The defendants' actions against plaintiff were extreme and outrageous and caused plaintiff severe emotional distress.

141. The defendants breached a duty owed to the plaintiff that either unreasonably endangered plaintiff's physical safety, or caused the plaintiff to fear for his own safety.

## TENTH CLAIM

### (NEGLIGENCE, GROSS NEGLIGENCE UNDER STATE LAW)

142. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

143. The Defendant City of New York and the individual police officer defendants are liable to plaintiff because they owed plaintiff a cognizable duty of care as a matter of law, and breached that duty.

## ELEVENTH CLAIM

### (MONELL CLAIM AGAINST THE CITY OF NEW YORK)

144. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

145. Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiff.

146. Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants were unfit officers and prosecutors who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

147. Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.  Moreover, upon information and belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

148. Further, defendants City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy)

29

would stop, arrest and prosecute innocent individuals, based on pretexts and false evidence.

149. In addition, the following are municipal policies, practices and customs: (a) arresting and prosecuting innocent individuals; (b) fabricating and testimony evidence against individuals; and (c) retaliating against individuals who engage in free speech.

### TWELFTH CLAIM

#### (STATE LAW RESPONDEAT SUPERIOR CLAIM AGAINST CITY OF NEW YORK)

150. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

151. Notwithstanding their unconstitutional and unlawful conduct, the actions of the individual defendants were taken in the course of their duties and were incidental to their otherwise lawful function as agents, servants and employees of the City of New York, as members of the NYPD and NYCDA.

152. Further, the individual defendants were acting within the scope of their employment as New York City police officers and New York County assistant district attorneys when they committed the above described acts against plaintiff.

153. The City of New York is therefore vicariously liable under New York State law for the aforesaid torts.


DATED:    New York, New York
          July 5, 2011

                              MICHAEL O. HUESTON, ESQ.
                              *Attorney for Plaintiff*
                              350 Fifth Avenue, Suite 4810
                              New York, New York 10118
                              (212) 643-2900
                              mhueston@nyc.rr.com
                              By:


                              __s/_____
                              MICHAEL O. HUESTON

                              Steven Legon, Esq.
                              20 Vesey Street
                              New York, New York 10007